Platt, J.,
dissented. The question of jurisdiction in this cause involves the construction of the constitution of the United States, the validity of an act of Congress, and the inherent rights of state sovereignty. I approach the subject with unfeigned diffidence ; but, in performing the unpleasant duty of dissenting from all my brethren on this occasion, I feel some consolation in the reflection, that if my opinion be erroneous, it will be harmless also.
By the act of Congress, entitled, “ An act laying duties on licenses to retailers of wines, spirituous liquors, and foreign merchandises,” passed the 2d day of August, 1813, it is enacted, that “ all fines, penalties, and forfeitures which shall be incurred by force of this act, shall and may be sued for and recovered in the name of the United States” &c. : “ and where the cause of action, or complaint, shall arise, or accrue, more than fifty miles distant from the nearest place by law established for the holding of a district court, within the district in which the same shall accrue, such suit and recovery may he had before any court of the state, holden within the said district, having jurisdiction in like cases.”
The attorney for the United States has brought an action of debt in this court, for a penalty accrued under this act of Congress; and the question is, whether we can rightfully hold jurisdiction of the cause ?
The constitution of the United States (art. 3. sec. 1.) declares, that “ the judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may, from time to time, ordain and establish.”
Much criticism has, on various occasions, been bestowed on the words “ shall be vested,” as used in this article. I admit that these words are imperative; but, in my judgment, they arc used here, generally, to mark out, and define one oí the *21 three great co-ordinate departments of *the government; and without any view to the questions of exclusive or concurrent jurisdiction between the several states, and the United States, The constitution ordains, that “ all legislative powers herein granted shall he vested in a Congress of the United States,” &e. ; that “ the executive power shall be vested in a president,” &c.; and that “ the judicial power shall be vested in one Supreme Court, and such inferior courts as the Congress may, from time to time, ordain and establish.” The Congress, the president, and the Supreme and inferior courts of the United States, are thus appointed as the organs for exercising all the functions of national sovereignty. The constitution then assigns, and limits the powers intended to be conferred on each of these departments. There is no doubt, that the judicial power of the federal government, whatever it may be, is vested in, and can only be exercised by, the federal courts, whose tenure is fixed, whose compensation is regulated, and whose responsibility is secured, in the constitution of the United States.
By the 2d section of the 3d article it is declared, that “ the judicial power shall extend to all cases in law and equity, arising under this constitution, the laws of the United States, and treaties made, or which shall be made, under their authority ; to all cases affecting ambassadors, other public ministers, and consuls; to all cases of admiralty, and maritime jurisdiction ; to controversies to which the United States shall be a party ; to controversies between two or more states ; between a state and citizens of different states; between citizens of the same state, claiming lands under grants of different states ; and between a state, or the citizens thereof, and foreign states, citizens, or subjects.”
“ In all cases affecting ambassadors, other public ministers, and consuls, and those in which a state shall be a party, the Supreme Court shall have original jurisdiction. In all other cases before mentioned, the Supreme Court shall have appellate jurisdiction, both as to law and fact, with such exceptions, and under such regulations, as the Congress shall make.” The words, “ the judicial power shall extend to, <fcc. mean, that the federal organs of judicial power shall *h ave jurisdiction of, &c. Here it is important to note a distinction between legislative and judicial power: Jurisdiction, or jus dicere, in our courts, implies nothing exclusive; but legislation, or jus facen, often implies exclusive power. To make law is an exercise of the will, in establishing a rule of action ; to expound, and administer the law, is the exercise of judgment, and legal science in the application of that rule.
The powers of Congress “ to regulate commerce with foreign nations,” and :: to make war,” are, in their nature, exclusive ; because they are utterly repugnant to, and irreconcilable with, the exercise of á concurrent power of willing, or legislating, on *22 the same subjects. But whether the exercise of judicial power, in any of the specified cases, be exclusive, or concurrent, the terms of that article of the constitution are equally satisfied. In either case, the judicial power of the United States “ extends to those cases ; and, looking at that section alone, there is no necessary repugnance, or inconsistency, in the idea of a concurrent jurisdiction in the state courts. But, in examining the whole instrument, and considering the objects and design of the federal government, and its genius and structure, in relation to the state governments, and allowing, also, to the federal government the inherent and implied power of self-preservation, I think the constitution has vested in Congress a large discretion ; not only in the organization of the courts of the Union, but in the modification of the judicial power of the United States, in the specified cases to which it is to extend.
This legislative discretion I find in that clause of the constitution which empowers Congress “ to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this constitution in the government of the United States, or in any department or officer thereof.”
It is here worthy of remark, that the constitution has so completely framed and reared the legislative and executive departments, that nothing remained but to elect and appoint the representatives, senators, president, and vice president; and those functionaries were ready to move in *their appointed spheres. But the primary duty of creating the judiciary department, is referred to Congress. The constitution, in regard to that branch of the government, has done no more than to enjoin upon Congress the duty of organizing the Courts of the Union; and of distributing and regulating the judicial power in the specified cases.
The legislative discretion on that subject has, indeed, important constitutional limits. There must be a Supreme Court; there may, and I think there must be, at all times, courts of the United States inferior to the Supreme Court. The judicial organs of the Union shall have jurisdiction in all the specified cases. Congress, therefore, cannot divest them of such jurisdiction. In certain of those specified cases, !! the Supreme Court shall have origin al jurisdiction and in all the other specified cases, it “ shall have appellate jurisdiction, with such exceptions, and under such regulations, as Congress shall make.”
These are all the provisions in the constitution, in regard to the judicial power; and we find, that in the “ act to establish the judicial courts of the United States,” (24th September, 1789.) Congress not only organized the courts, and gave a legislative exposition of the constitution in many particulars, but also exercised a broad discretion in enacting, that in certain cases the jurisdiction of the various courts shall be origi *23 nal or appellate, exclusive or concurrent, as they deemed expedient, in reference to the state courts. ⅜
The question now is, whether Congress have transcended the limits of the constitution in enacting, that for the pecuniary penalty in this case, a “ suit and recovery may be had in any state court,” Sfc. ‘■having like jurisdiction ?” I admit that Congress cannot rest judicial power in a state court, nor transfer such power from the federal courts, so as to divest them of it; but there is a class of cases, in which I think Congress has a discretion to make the jurisdiction of the federal courts either exclusive or concurrent, as they shall judge expedient, from time to time. Iri all the specified cases, the judicial power of the Union, either original or appellate, must exist, and be maintained in the federal courts, except where Congress may see fit to limit *the right of appeal. But the constitution is as completely satisfied, and the design of the federal judica-tures is as well answered, in many of the specified cases, by the exercise of appellate, as of original, jurisdiction. Nor does it make anv essential difference, whether the jurisdiction of the federal courts be exclusive of, or concurrent, with, that of the state courts ; because the appellate power of the federal courts is made co-extensive with the concurrent jurisdiction of the state courts in the specified cases, unless Congress choose to limit the right of appeal. For instance, “ in all cases in law and equity arising under the constitution, the laws of the United States, and treaties made, or which shall be made, under their authority,” it is not very important, as it regards public policy, whether the state courts have concurrent jurisdiction or not, because the appellate power of the federal courts attaches in all those cases, and it is ordinarily an ample remedy for correcting state influence or partialities, and producing uniformity of decision.
In the particular case now before us, I cannot bring my mind to the conclusion, that Congress has violated the constitution in enacting that this “ suit may be brought, and a recovery had,” in a state court. That statute has, in effect, only waived the exclusiveness of federal jurisdiction, quoad hoc; and our entertaining this suit is perfectly consistent with the concurrent, as well as the appellate, jurisdiction of the federal courts. Whether we hold cognizance or not, the judicial power of the United Stales, in this case, is “ vested in” the federal courts; it does “ extend to” the case now before us; and if we decide wrong, it is a case for an appeal from the court of dernier resort of this state, to the Supreme Court of the United States.
The decision of the Supreme Court of the United States in the case of Martin v. Hunter’s Lessee, (1 Wheaton, 304.) has my entire approbation ; and I gladly avail myself of this occasion, to render my tribute of respect for the profound, perspicuous. and dispassionate reasoning of the two learned judges *24 who delivered opinions in that case. I am unable to discern how that decision can be applied as an authority in favor of the defendant in this case. The principal #question there was, whether the appellate jurisdiction of the Supreme Court of the United States extended to a judgment of the highest court- in Virginia, which involved the construction of a treaty; and whether the act of Congress, allowing and regulating such ap peal, was constitutional ? The court decided in favor of such appellate jurisdiction, and affirmed the validity of the statute of the United States, on the ground, that as the cause involved the construction of a treaty, it was one of the specified case? in which the judicial power of the United States “ shall be vest ed” in the federal court, and to which the judicial power “ shall extend,and that, although the state court had rightful original jurisdiction of the cause, yet, if in any stage of it the construction of a treaty became material, then the casus foederis occurred, and the appellate jurisdiction was “ vested in” the federal court, and “ extended to” the case. Far from wishing to impeach that decision, Tclaim to derive authority from it in support of my opinion in tins cause.
That case shows, that I am correct in assuming the position, that in this case, one of those specified the Federal Court is “ vested” with jurisdiction, although the state court also ha? original arid concurrent jurisdiction over the same subject; or in other words, that to be vested with, does not imply exclusive jurisdiction.
The questions in this case, according to my apprehension, are these: 1st. Whether, independent of any provision in the constitution of the United States, the general common law jurisdiction of this court, attaches in such a case ? and 2dly, If such a right exists on general principles, as an inherent power in this court, whether there be any thing in the constitution of the United States which deprives us of such jurisdiction ? These questions depend upon the positive enactments of the constitution, and our peculiar municipal regulations; and, therefore, we cannot expect to derive much light; from any adjudged cases in England, or from any foreign jurists. But, with patriotic pride, I refer to the opinions of a profound jurist, and illustrious statesman of our own country, whose mind illumined every object to which it ivas directed. The intellect of Hamilton has beamed upon this subject; and his cotempo-rary exposition #of the constitution, deserves the most respectful deference.
In the number 82 of Publius, (see Federalist, 2d vol. page 243.) he says, “ the states will retain all pre-existing authorities, which may not be exclusively delegated to the federal head ; and this exclusive delegation can only exist in one of three cases; where an exclusive authority is, in express terms, granted to the Union ; or where a particular authority is granted to the Union, and the exercise . of a like authority is *25 prohibited to the states; or where an authority is granted tt> the Union, with which a similar authority in the states would be utterly incompatible. Though these principles may not apply with the same force to the judiciary, as to the legislative, power; yet I am inclined to think, that they are, in the main, just, with respect to the former as well as the latter. Under this impression, I shall lay it down as a rule, that the state courts will retain the jurisdiction they now have, unless it appears to be taken away in one of the enumerated modes.” “ The only thing in the proposed constitution, which wears the appearance of confining the causes of federal cognizance, to the federal courts, is contained in this passage, ‘ the judicial power of the United States, shall be vested in one Supreme Court, and in such inferior courts as the Congress shall, from time to time, ordain fend establish.’ This might either be construed to signify, that the supreme and subordinate courts of the Union, should alone have the power of deciding those causes to which their authority is to extend ; or simply to denote, that the organs of the national judiciary should be one Supreme Court, and as many subordinate courts as Congress should think proper to appoint: in other words, that the United States should exercise the judicial power with which they are to be invested, through one supreme tribunal, and a certain number of inferior ones, to be instituted by them. The first excludes, the last admits, the concurrent jurisdiction of the state tribunals; and as the first would amount to an alienation of state power by implication, the last appears to me the most defensible construction.”
“ But this doctrine of concurrent jurisdiction, is only clearly applicable to those descriptions of causes, of which *the state courts have previous cognizance. It is not equally evident in relation to cases which may grow out of, and be peculiar to, the constitution to be established ; for not to allow the state courts a right of jurisdiction in such cases, can hardly be considered as the abridgment of a pre-existing authority. I mean not, therefore, to contend, that the United States, in the course of legislation upon the objects entrusted to their discretion, may not commit the decision of causes arising upon a particular regulation, to the federal courts solely, if such a measure should be deemed expedient; but I hold, that the state courts will be divested of no part of their primitive jurisdiction, further than may relate to an appeal; and, lam even o f opinion, that in every case in which they were not expressly excluded by the future acts of the national legislature, they will, of course, take cognizance of the causes to which those acts may give birth. This I infer from the nature of judiciary power, and from the general genius of the system. The judiciary power of every government looks beyond its own local or municipal laws; and in civil cases, lays hold of all subjects of litigation between parties within its jurisdiction, though the causes of dispute are relative *26 to the laws of the most distant part of the globe. Those of Japan, not less than of New-York, may furnish the objects of legal discussion to our courts. When, in addition to this, we consider the state governments, and the national government. as they truly are, in the light of kindred systems, and as parts of one whole, the inference seems to he conclusive, that the state courts would have a concurrent jurisdiction in all cases arising under the laws of the Union, where it was not expressly prohibited.”
“ Here another question occurs ; what relation would subsist between the national and state courts, in these instances of concurrent jurisdiction? I answer, that an appeal would certainly lie from the latter, to the Supreme Court of the United States. The constitution, in direct terms, gives an appellate jurisdiction to the Supreme Court, in all the enumerated cases of federal cognizance, in which it is not to have an original one, without a single expression to confine its operation to the inferior federal courts. The ^objects of appeal, not the tribunals from which it is to be made, are alone contemplated.” “ Agreeably to the remark already made, the national and state systems are to be regarded as one whole. The courts of the latter will, of course, be natural auxiliaries to the execution of the laws of the Union, and an appeal from them will as naturally lie to that tribunal, which is destined to unite and assimilate the principles of national justice, and the rule of national decision. The evident aim of the plan of the convention is, that all the causes of the specified classes shall, for weighty public reasons, receive their original or final determination in the courts of the Union.”
If I do not deceive myself, the whole scope of this commentary corresponds with the view which I have taken of this subject, and fully authorizes the inference, that if the act of Congress, imposing these pecuniary penalties, had not appointed the forum, the original jurisdiction would have been concurrent. Congress have said, that the federal courts shall ha\e exclusive jurisdiction in regard to these penalties, except where the cause of action arises more than fifty miles from the place of holding the District Court; and in this peculiar class of cases they allow a concurrent jurisdiction.
The “act to establish the judicial courts of the l mted States,” (September 24, 1789,) and all the successive acts of Congress on that subject, accord with this interpretation of the constitution ; for it will be seen, that Congress have exercised a discretion, which has been varied from time to time, so as, at one time, to give exclusive, and at other times only concurrent, original jurisdiction to the federal courts over the same subject.
The decision in the case of Martin v. Hunter’s Lessee (before cited,) has settled the point, that wherever a state court holds cognizance in any of the specified cases to which “ the judicial *27 powers of the United States extends,” the Supreme Court of the United States has appellate jurisdiction, subject only to such exceptions as Congress shall make, so that the system is rendered harmonious, and the design of the constitution is effectuated, by securing to the courts of the Union, either original or final jurisdiction, cases which our government should national policy required that the federal exercise supreme judicial authority.
have read and examined, with respectful attention, the opinion of the General Court of Virginia, in the case of Jackson v. lioiv, (delivered by White, presiding judge, and published in the National Intelligencer, on the 23d of December, 1815.) on the very point now before us ; and, with great respect for that high tribunal, I think it erred in pronouncing, that £i the act of Congress was unconstitutional;” and “ that to assume jurisdiction over the case, would be to exercise a portion of the judicial power of the United StatesI am of opinion, that this court has jurisdiction to give a civil remedy for a debt due to the United States, whether that debt accrued upon contract, or by way of penalty for a violation of a statute. We do not acquire such jurisdiction by virtue of the act of Congress ; it is inherent in this court, as a court of general common law jurisdiction. Congress cannot compel a state court to entertain such a suit. If they had said, imperatively, that state courts shall hold cognizance in such cases, then, indeed, the question would have arisen, whether they had aright to constitute us the organ of judicial power for the United States1 In the present case, I do not understand them as intending such an absurdity. In enacting that “ such suit and recovery may be had before any state court, &c., having jurisdiction in like cases,” I understand nothing more than that the United States voluntarily submit, themselves as suitors in our courts, and the attorney for the United States is authorized for that purpose. In doing so, Congress have not attempted to ordain and establish the state courts, as inferior courts of the United States, in the sense of the constitution; but have, in effect, merely qualified, or repealed in part, the original statute of the United States, (passed the 24th of September, 1789,) which gave exclusive jurisdiction to the federal courts for such penalties. If a state has no organs of judicial power adapted to such a case; or if a state court refuse to hold cognizance in such a suit, then the provision in the act of Congress becomes nugatory, and the remedy must be had in the federal court. If a state court exercises jurisdiction in such case, it is subject to the appellate jurisdiction of the federal court.
Whether the courts of one sovereign would hold jurisdiction of civil suits, wherein another sovereign appears as plaintiff, depended originally on the pleasure of the sovereign to whom the suitor applied for justice; but by the usage and 'comity of *28 nations, it has ripened into a right, in all cases of contract, so as to impose a duty on the courts of every sovereign to afford such remedies to any other sovereign, or his subjects, ’«# peace with the nation where the remedy is sought. It seems to me that the General Court of Virginia erred in assuming, which they appear to do in the case of Jackson v. Row, (before cited,) that their right to entertain such a suit was to be derived, if at all, from the act of Congress merely, as constituting them a court for that purpose.
Suppose Congress should enact, that custom-house bonds shall be sued in the state courts; such a law would not establish new courts for the United States; it would not enlarge the jurisdiction of state courts ; but must be considered as directory to their attorney to ask a remedy in our courts. Suppose our national government should direct the attorney for the United States to sue for like penalties in the courts- of Florida, or of Canada, it might be justly said, that such an act would be inexpedient and unwise, as improperly asking a favor of a foreign government, which it might lawfully grant or refuse; but I see no ground to say, that such an act would be unconstitutional.
In regard to the distinction between civil actions founded on penal statutes, and actions on contracts, the law and usage of nations impose no obligation on one sovereign to afford a remedy to enforce a penal law of another sovereign ; and it is optional for the former to do it or not, according to his own convenience.
It is said to be a fundamental maxim, that the courts of one sovereign will not take cognizance of, or enforce, the pena! laws of another sovereign ; but I think it more correct to say, that one sovereign ought not to entrust the execution of his penal laws to the courts of another sovereign ; and as applicable to sovereigns of distinct and separate territorial ^jurisdictions, there is obvious reason and wisdom in the policy of such usage. But when we consider the complex and peculiar structure and relations of our federal government and our state governments, moving, indeed, in different spheres, but occupying the same territorial space, and operating upon, and for the benefit of the same people, the practice of other independent nations affords no analogy sufficiently strong to guide us in the present case.
That a state court can in no case hold jurisdiction to punish, criminaliter, for an offence against the United States, is clear, for this plain reason, that every criminal prosecution must charge the offence to have been committed against the state or sovereign, whose courts sit in judgment on the offender. In the administration of criminal justice, every sovereign acts as judge in his own case, as the offended party ; and a state court cannot act as an organ of judicial power representing *29 the United States, because, in its appointment, tenure, and accountability, it is independent of the federal government.
This court, in its judicial functions, now represents the sovereignty of the state of JS'eiv- York, as to the question before us ; and, considering the intimate relation between the state, and the United States, and the common interest which all the states have, in maintaining and giving complete effect to the laws of the Union ; and considering, also, that the provision in the act of Congress in this class of cases, is for the benefit and accommodation of our own citizens, in rendering it more cheap and easy to defend themselves when sued for such penalties; I think it fit and expedient to afford the remedy of a civil action, to enforce this penal statute of the United States.
In coming to this conclusion, I perceive no great danger of introducing those evils, so eloquently described, and so feelingly deprecated by the General Court of Virginia, as a system of a strange kind of Mosaic war, in the judiciary of nations. Here a Cadi sitting in judgment upon an Italian, denying the pope’s infallibility; there the stern fathers of the holy inquisition, putting a poor Turk to the rack, because he denies that Mahomet is the prophet of God; the judges of republican Virginia, pillorying an Englishman *for libeling royal-1y; and the court of King’s Bench, inflicting the same punishment upon an American, for libeling the government of the l hiited States, for the late declaration of war.” (Jackson v. Row, before cited.)
Whenever either of the cases supposed by the General Court of Virginia shall occur, I will examine it without, prejudice ; but in this case, I am of opinion, that there ought to be judgment for the plaintiffs.†
Judgment for the defendant.

 Vide ante, p. 4